UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-CIV-24339-SIMONTON

SAILYN DE LA TORRE,

    Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

    Defendant.
_____/

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

This matter is before the undersigned Magistrate Judge on the cross-motions for summary judgment filed by Plaintiff Sailyn De La Torre ("Plaintiff") and by Defendant, Nancy A. Berryhill, Acting Commissioner of Social Security Administration ("Defendant"), ECF Nos. [24] and [25].[1] The Defendant's Motion for Summary Judgment was also styled as an opposition to the Plaintiff's Motion for Summary Judgment, ECF No. [26]. The Plaintiff has filed a combined Reply to her Motion for Summary Judgment and an Opposition to the Defendant's Motion for Summary Judgment, ECF No. [27]. Pursuant to the consent of the Parties, the Honorable Kathleen M. Williams, United States District Judge, has referred this matter to the undersigned to take all necessary and proper action as required by law, through and including trial by jury and entry of final judgment, ECF Nos. [15] [17].

For the reasons stated below, the undersigned **DENIES** the Plaintiff's Motion for Summary Judgment, and **GRANTS** the Defendant's Motion for Summary Judgment.

---

[1] On January 23, 2017, Nancy A. Berryhill replaced Carolyn W. Colvin as the Acting Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is automatically substituted as the Defendant in this case.

I. **BACKGROUND**

A. **Prior Proceedings**

On July 1, 2015, Plaintiff was found disabled as of September 1, 2002, and eligible to receive Supplemental Security Income ("SSI"). (R. 33, 104-111).[2] On December 8, 2014, during Plaintiff's redetermination proceeding, Plaintiff was found to be no longer disabled as of December 1, 2014. (R. 104-111). Plaintiff subsequently requested a hearing before an Administrative Law Judge ("ALJ") which took place on March 8, 2016. (R. 50-82).

At the hearing, Plaintiff was represented by an attorney; and, Plaintiff and an impartial vocational expert ("VE") testified. On April 18, 2016, the ALJ issued a decision finding, among other things, that Plaintiff was not disabled under the Act because medical improvement occurred as of December 1, 2014, and the Plaintiff retained the residual functional capacity ("RFC") to perform jobs that existed in the national economy from December 1, 2014. (R. 27-49). Plaintiff then requested that the Social Security Administration's ("SSA") Appeals Council review the ALJ's decision, which was denied on August 8, 2016. (R. 1–8). Thus, the ALJ's decision stands as the final decision of Defendant and is ripe for review. 20 C.F.R. § 422.210(a).

Having exhausted all administrative remedies, Plaintiff timely filed the pending Complaint seeking judicial review of the administrative proceedings pursuant to 42 U.S.C. § 405(g), ECF No. [1]. Plaintiff requests this Court to reverse the Defendant's denial of benefits or remand this case to the Commissioner for further proceedings. Defendant filed an Answer to the Complaint, ECF No. [13].

---

[2] The letter "R", followed by a page number is used to designate a page in the Administrative Record, which is contained in ECF No. [14].

B. **Motions for Summary Judgment**

The Parties have filed their respective Motions for Summary Judgment. Generally, the Plaintiff challenges the ALJ's determination that the Plaintiff, who was twenty-eight at the time of the ALJ's decision, is no longer disabled due to her bipolar disorder, ECF No. [24] at 3. The Plaintiff challenges the ALJ's determination that the opinions of the Plaintiff's treating psychologist, Dr. Marcos E. Cintron, M.D., were only entitled to little weight, and argues that the ALJ failed to give sufficient reasons to support that determination. The Plaintiff further challenges the ALJ's determination that the Plaintiff was not credible in regards to her testimony about her symptoms related to her bipolar disorder. The Plaintiff also contends that the ALJ failed to take into account the episodic nature of the Plaintiff's mental disorder from the longitudinal perspective, and thus failed to properly consider that condition when determining the Plaintiff's residual functioning capacity ("RFC").[3] Finally, the Plaintiff contends the ALJ failed to demonstrate that Plaintiff's current symptoms related to her mental disorder had improved from those in 2005, when she was initially determined to be disabled, and therefore her benefits should have been terminated.

The Defendant contends that the ALJ properly determined that Dr. Cintron's opinions were only entitled to little weight since they were not supported by the objective medical evidence, including Dr. Cintron's own treating notes which documented the Plaintiff's unremarkable mental status, ECF No. [25] at 13, 14. Defendant further contends that the ALJ correctly found that the medical record demonstrates that the Plaintiff basically was stable and only showed significant abnormalities in July of 2015, when she did not take her medication, ECF No. [25] at 14. The Defendant argues that the Plaintiff's function reports demonstrate that her daily activities were inconsistent with Dr. Cintron's

---

[3] Based upon the ALJ's RFC determination, the VE testified at the hearing that the Plaintiff would be able to perform a significant number of jobs in the national economy as a packer, a laundry worker and a cleaner housekeeper.

conclusions regarding the Plaintiff's ability to function. Finally, the Defendant asserts that the ALJ properly evaluated the Plaintiff's claims regarding her symptoms, and properly determined her residual functional capacity based upon the medical evidence, and the Plaintiff's activities.

Thus, the fully briefed cross-motions for summary judgment present the following two issues to be determined by the undersigned:

1) whether the ALJ erred in according little weight to the opinion of the Plaintiff's treating psychiatrist, which resulted in a mental functioning capacity finding that was not based on substantial evidence; and,

2) whether the ALJ's credibility finding regarding the Plaintiff was supported by substantial evidence, ECF Nos. [24] at 1.[4]

For the following reasons and under the limited standard of review that governs this case, the Court finds that substantial evidence supports Administrative Law Judge ("ALJ") findings.

## II. STANDARD OF REVIEW

Judicial review of the ALJ's decision in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's factual findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, (1971); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence" is more than a scintilla, but less than preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support

---

[4] In the Defendant's Motion for Summary Judgment, the Defendant disputes each of the errors alleged by the Plaintiff and instead contends that the ALJ applied the proper legal standards, and that the ALJ's decision was supported by substantial evidence, ECF No. [25].

4

a conclusion. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Bloodworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

When reviewing the evidence, the Court may not reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence "preponderates" against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *Baker v. Sullivan*, 880 F.2d 319, 321 (11th Cir. 1989). This restrictive standard of review, however, applies only to findings of fact. No presumption of validity attaches to the Commissioner's conclusions of law, which are reviewed de novo, including the determination of the proper standard to be applied in reviewing claims. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991) ("The Commissioner's failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal."); *Martin v. Sullivan*, 894 F.2d at 1529.

## III. FRAMEWORK FOR ANALYSIS

A person who applies for social security disability benefits must prove her disability before being entitled to those benefits. 20 C.F.R. § 404.1512.[5] However, after disability is determined, the Commissioner must periodically review whether an individual is entitled to continued benefits and whether there has been medical improvement such that the individual can engage in substantial gainful employment. 20 C.F.R. § 404.1589; 20 C.F.R. § 416.989; 20 C.F.R. § 404.1594; 20 C.F.R. § 416.994.

---

[5] Title II of the Social Security Act provides for federal Disability Insurance Benefits. 42 U.S.C. § 401 et seq. Title XVI of the Social Security Act, 42 U.S.C. § 1381, et seq., provides for Supplemental Security Income Benefits for the disabled ("SSI"). The same analysis is used under both Titles to determine whether a claimant is disabled, and identical regulations have been promulgated with respect to the disability determination. Therefore, to the extent this Order, and the cases cited herein refer to Title II, the analysis is equally applicable to the Title XVI claims of the Plaintiff.

When an ALJ is determining whether a disability has ended, the Regulations mandate a seven-step sequential inquiry. 20 C.F.R. §§ 404.1594(f)(5), 416.994(b)(5). This sequential inquiry asks, in substance, whether a claimant (1) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (2) has experienced medical improvement; (3) has experienced medical improvement that is related to the ability to work; (4) has experienced medical improvement, but an exception to the medical improvement applies; (5) has current impairments that when considered in combination are severe; (6) can perform past relevant work; and (7) can perform other work that exists in the national economy. 20 C.F.R. §§ 404.1594(f), 416.994(b). "When considering a case for termination or cessation of benefits, ... the burden is on the Commissioner to prove that the claimant is no longer disabled as of the cessation date because the Plaintiff had experienced 'medical improvement.' " *Townsend v. Comm'r of Soc. Sec.*, No. 6:13–cv–1783–Orl–DAB, 2015 WL 777630, at *3 (M.D. Fla. Feb. 24, 2015) (unpublished) (emphasis omitted) (citing *Simpson v. Schweiker*, 691 F.2d 966, 969 (11th Cir. 1982)), superseded by statute on other grounds as stated in *Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1214 (11th Cir. 1991); *Hie v. Bowen*, 788 F.2d 698 (11th Cir. 1986); *Carbonyl v. Comm'r of Soc. Sec.*, No. 6:11–cv–400–Or–22DAB, 2012 WL 1946070, at *3–4 (M.D. Fla. May 11, 2012) (unpublished report and recommendation), adopted, 2012 WL 1946072, at *1 (unpublished order). Medical improvement is "any decrease in the medical severity" of a claimant's impairment that was present at the time of the most recent favorable decision. See 20 C.F.R. § 404.1594(b)(1). A decrease in medical severity "must be based on changes (improvement) in the symptoms, signs and/or laboratory findings" associated with the impairment. *Id.*

## IV. ANALYSIS

### A. *Whether the ALJ Appropriately Considered the Opinion of Plaintiff's Treating Psychiatrist*

#### 1. Framework for Evaluating Treating Physician Opinions

When determining what weight to give to a physician's opinion, an ALJ considers several factors, including whether the doctor examined or treated the claimant, the evidence the doctor presents to support his or her opinion, the length and extent of the relationship between the physician and claimant, whether the physician's opinion is consistent with the record as a whole, and the physician's specialty. *See* 20 C.R.F. § 404.1527(c). "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." *Winschel v. Comm. of Social Sec,* 631 F. 3d 1176, 1178–79 (11th Cir. 2011) (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). Absent "good cause," an ALJ is to give the medical opinions of treating physicians "substantial or considerable weight." *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir.1997); *see* 20 C.F.R. §§ 404.1527(d)(1)-(2), 416 .927(d)(1)-(2). Indeed, the SSA describes the proper methodology for evaluating opinion evidence in disability claims:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(c)(2).[6] Good cause to discount a treating physician's opinion exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2)

---

[6] A "treating source" (*i.e.,* a treating physician) is a claimant's "own physician, psychologist, or other acceptable medical source who provides you, or has provided

7

evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Winschel,* 631 F.3d at 1179 (quoting *Phillips v. Barnhart,* 357 F.3d 1232, 1241 (11th Cir. 2004)). With good cause, an ALJ may disregard a treating physician's opinion, but she "must clearly articulate [the] reasons" for doing so. *Winschel,* 631 F.3d at 1179 (quoting *Phillips,* 357 F.3d at 1240–41). "[T]he ALJ 'must specify what weight is given to a treating physician's opinion and any reason for giving it no weight and failure to do so is reversible error.' " *Nyberg v. Comm'r of Soc. Sec.,* 179 F. App'x 589, 590–91 (11th Cir. 2006)(quoting *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir.1986)). "When the ALJ has articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error." *Weekley v. Comm'r of Soc. Sec.,* 486 F. App'x 806, 808 (11th Cir. 2012) (citing *Moore v. Barnhart,* 405 F.3d 1208, 1212 (11th Cir. 2005)).

### 2. Dr. Cintron's Treatment of Plaintiff

Dr. Cintron was Plaintiff's treating psychiatrist from September 1, 2003, through, at least, December 14, 2015. During this period, Dr. Cintron diagnosed Plaintiff with Bipolar I Disorder and prescribed her various medications. (R. 38, 598).

Beginning in at least, July 2014, Dr. Cintron indicated that Plaintiff's mental exams were normal: she was oriented to person and place, was properly dressed and groomed, was cooperative with a pleasant affect, and there was no evidence of gross psychosis/agitation, suicidal or homicidal ideations, or threat to herself or others. (R. 517-519, 555).[7]

---

you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 404.1502(c)(2).

[7] Dr. Cintron's earlier treatment records, as well as Plaintiff's other medical records, are contained in the record, but are only discussed in this Order to the extent necessary to resolve the issues raised by the Parties' Motions for Summary Judgment.

In November 2014, Dr. Cintron indicated that Plaintiff was tolerating her medications well and again noted there were no major concerns. (R. 555). Plaintiff's mental status exam revealed that she was alert and oriented to person and place, properly dressed and groomed, cooperative with proper eye contact, and that she exhibited a broad affect; there was no evidence of gross psychos/agitation. (R. 555). Plaintiff's later examinations in March and June 2015, showed unchanged mental status exams. (R. 554, 599).

At a visit on July 6, 2015, Plaintiff had stopped taking her medication because she was reportedly feeling fine, and her condition subsequently deteriorated. (R. 598). At that time, Dr. Cintron noted that Plaintiff did not meet the criteria for involuntary hospitalization. (R. 598). However, Plaintiff was admitted to the Citrus Health Network on July 14, 2015, after being brought in by police due to fighting with her brother. (R. 608-616). Her mother reported that Plaintiff had refused to take her medication, and the mental status examination was abnormal, although her attention, concentration, and recent and remote memory were nevertheless intact. (R. 608- 616). She was discharged several days later, on July 20, 2015, with a diagnosis for manic bipolar disorder. (R. 604). Plaintiff's mental status exam on July 27, 2015, was back to being within normal limits, and Plaintiff restarted her medication. (R. 597). Subsequent mental status exams in August and September 2015 showed no mental distress. (R. 594-595).

On the Plaintiff's September 25, 2015, visit, the Plaintiff was found to have no major concerns, and she showed no evidence of gross psychosis or agitation. (R. 594).

On October 26, 2015, the Plaintiff and her mother were seen by Dr. Cintron. (R. 593). During that visit, the Plaintiff and her mother requested Dr. Cintron to write a letter stating the Plaintiff's diagnosis and her level of functioning. In a letter dated that same date, Dr. Cintron concluded, among other things, that the Plaintiff had been and still remained incapacitated. (R. 581).

At the Plaintiff's visit on November 16, 2015, although Dr. Cintron noted that the Plaintiff's mother was concerned that the Plaintiff was depressed and anxious, Dr. Cintron found that the Plaintiff's affect was congruent to her mood, that she showed no evidence of psychic distress, and no evidence of gross psychosis (R. 592). To the extent that Dr. Cintron addressed the Plaintiff's ability to work, he stated that she was still unable to work because she was not able to properly execute what she had learned in beauty school. (R. 592). Dr. Cintron did not mention that her bipolar disorder affected her ability to work.

The last note in the record from Dr. Cintron is dated December 14, 2015. On that date, Dr. Cintron completed a form "Medical statement concerning bipolar disorder and related conditions for Social Security disability claim." He marked "Yes" to the questions regarding whether the Plaintiff's symptoms of bipolar disorder were either intermittent or persistent. (R. 584). He opined that the claimant had marked restriction in activities of daily living and marked difficulty in maintaining social functioning. (R. 585). Dr. Cintron also indicated that deficiencies in concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere) were present, as well as, repeated episodes of deterioration or decompensation in work or work-like settings. (R. 585). In addition, Dr. Cintron indicated that Plaintiff was markedly impaired in several areas, including: her ability to remember locations and work-like procedures; her ability to carry out detailed instructions; her ability to maintain attention and concentration for extended periods; perform activities within a schedule, maintain attendance and be punctual within customary tolerances; sustain ordinary routine without special supervision; and in her ability to work in coordination with and proximity with others without being distracted by them. (R. 585-586). He also found Plaintiff markedly impaired in her ability to complete a normal workday/week without interruptions from her psychologically based symptoms, in her ability to interact

appropriately with the public, in her ability to ask simple questions or request assistance, and in her ability to get along with coworkers or peers.

### 3. The ALJ's Assessment of Dr. Cintron's Opinions

In her Motion for Summary Judgment, Plaintiff first argues that the ALJ erred when she rejected the opinion of Plaintiff's treating psychiatrist, Dr. Cintron. For the following reasons, the Plaintiff's contention is without merit.

At the outset, the undersigned notes that the ALJ dedicated nearly six pages of her decision to the evaluation of the opinions of Plaintiff's medical consultants. Specifically, the ALJ considered the opinions of Dr. Marcos Cintron (Plaintiff's treating psychiatrist), Dr. Frank Walker (state agency medical consultant), and Drs. Heather Bradley and David Clay (state agency psychological consultants). (R. 35–40). Relevant to the Plaintiff's challenge to the ALJ's determination, on November 26, 2014, Heather Bradley, a State agency psychological consultant, opined that Plaintiff did not have a severe mental impairment. (R. 525-538). Similarly, on March 31, 2015, David Clay, another State agency psychological consultant, found that Plaintiff had no limitations in her activities of daily living. (R. 560-573). The ALJ accorded little weight to these opinions, and instead concluded that the claimant's testimony and the record medical evidence, including the records from Dr. Cintron, supported a finding that the claimant has a moderate restriction in concentration, persistence or pace. (R. 40). Nevertheless, the ALJ went on to find that Dr. Cintron's opinions regarding the Plaintiff's other limitations were entitled to only little weight rather than controlling weight. (R. 40-41).

Specifically, based upon Dr. Cintron's mental status examinations of Plaintiff from December 1, 2014, until December 14, 2015, the ALJ determined that Dr. Cintron's opinions were not entitled to controlling weight because Dr. Cintron's opinions, including finding that the Plaintiff was incapacitated, and suffered marked limitations in many areas, were not well supported by the objective medical evidence of the record, including

Dr. Cintron's own mental status exams of the Plaintiff. (R. 40). A review of the medical records supports the ALJ's determination regarding Dr. Cintron's opinions.

First, it is worth noting that generally Dr. Cintron's treatment notes for the time period at issue are relatively sparse, and each note typically consists of one short paragraph for each note which describes the Plaintiff's current mental status, and provides a brief statement of the plan of treatment. (R. 555, 590, 599, 598, 597, 596, 595, 594, 593, 592, 591).

In addition, as noted above, Plaintiff's course of treatment with Dr. Cintron between December 1, 2014 and, at least, December 14, 2015, reflect that the Plaintiff was relatively stable and that her bipolar condition was controlled when she followed her prescribed medicine regimen. Other than the approximately ten-day period in July 2015, when the Plaintiff admittedly stopped taking her medication, Plaintiff reported "no major concerns" and displayed no evidence of gross psychosis or agitation. (R. 555, 590, 599, 597, 596, 595, 594, 592, 591). The ALJ also correctly found Dr. Cintron's opinions were not supported by the Plaintiff's statements regarding her abilities and activities as reflected by her Function Reports. (R. 36, 40). In so doing, the ALJ noted that the Plaintiff stated that she had no difficulty with her personal care, was able to prepare her own meals, and was able to perform household chores. (R. 39). The ALJ further noted that the Plaintiff reported that she attends church and spent time with others over the phone and internet, and goes to the gym. (R. 30).

Further, as to Dr. Cintron's conclusion that the Plaintiff was totally incapacitated, the records reflect that the Plaintiff's visits prior to and immediately after the October 26, 2015, visit when the Plaintiff and her mother requested the Dr. Cintron write a letter stating the Plaintiff's diagnosis and her level of functioning, were relatively unremarkable. Specifically, on the Plaintiff's September 25, 2015 visit, the Plaintiff was found to have no major concerns, and she showed no evidence of gross psychosis or

12

agitation (R. 594). Similarly, at the Plaintiff's visit on November 16, 2015, although Dr. Cintron noted that the Plaintiff's mother was concerned that the Plaintiff was depressed and anxious, Dr. Cintron found that the Plaintiff's affect was congruent to her mood, that she showed no evidence of psychic distress, and no evidence of gross psychosis. (R. 592). To the extent that Dr. Cintron addressed the Plaintiff's ability to work, he stated that she was still unable to work because she was not able to properly execute what she had learned in beauty school. (R. 592). Dr. Cintron did not mention that her bipolar disorder affected her ability to work. Thus, Dr. Cintron's treatment notes are inconsistent with his determination that the Plaintiff was totally incapacitated.

Similarly, on December 14, 2015, Dr. Cintron filled out a form entitled, "Medical statement concerning bipolar disorder and related conditions for Social Security disability claim." (R. 584-587). In that form, Dr. Cintron indicated the Plaintiff's level of impairment related to her psychiatric state. However, the assessment was somewhat inconsistent as to whether the Plaintiff was markedly, moderately or not significantly impaired in various work limitation categories. For example, Dr. Cintron checked boxes indicating that the Plaintiff was markedly impaired in her ability to remember locations and work-like procedures, and her ability to ask simple questions or request assistance, but found that the Plaintiff was not significantly impaired in her ability to carry out very short and simple instructions, and was only moderately impaired in her ability to understand and remember short and simple instructions, her ability to understand detailed instructions, her ability to make simple work-related decisions, respond appropriately to changes in the work setting, and to travel in unfamiliar places or use public transportation. (R. 585-587). Further, the treatment note for that same date indicates that although the Plaintiff's affect was restricted, she was properly dressed, groomed, with good hygiene, was cooperative and displayed proper eye contact, and showed no evidence of gross psychosis or agitation, and thus Dr. Cintron's treatment

13

plan was to continue with current medications and dosing. (R. 591). Thus, Dr. Cintron's conclusions about the Plaintiff's marked limitations in certain work tasks again, were not consistent with the other parts of his examination and assessment of the Plaintiff. Further, the Plaintiff's mother's statements contained in Dr. Cintron's Treatment Notes for November and December of 2015 regarding the mother's concern that the Plaintiff was depressed are not medical opinions and are not entitled to be given weight by the ALJ.

Moreover, the record reflects that when Plaintiff failed to comply with her medicine regimen, her condition deteriorated, which required, on one occasion, short-term hospitalization. However, the Plaintiff stabilized relatively quickly once she was back on her medications, which supports a finding that the Plaintiff was not disabled. *See, e.g., Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) ("A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling."); *Watson v. Heckler*, 738 F.2d 1169, 1173 (11th Cir. 1984) (in addition to objective medical evidence, it is proper for ALJ to consider use of pain-killers, failure to seek treatment, daily activities, conflicting statements, and demeanor at the hearing). Thus, the ALJ's determination that Plaintiff did not have any limitation in her activities of daily living or in maintaining social functioning and that Plaintiff only had a moderate restriction in her concentration, persistence or pace, was supported by the record. Therefore, to the extent that Dr. Cintron's opinions on those issues differed from the ALJ and were not supported by the Plaintiff's medical records and function reports, the ALJ had good cause not to give controlling weight to those opinions.

The Plaintiff also argues that, even if the ALJ arguably properly rejected Dr. Cintron's limitations as to all social functioning and daily living limitations, the ALJ failed to explain why she rejected Dr. Cintron's opinion that Plaintiff suffered from marked limitations and deficiencies related to concentration, persistence or pace in work or

14

work-like settings, ECF No. [24] at 15.  This argument is without merit because the ALJ's decision makes clear that the ALJ found that Dr. Cintron's opinions regarding the Plaintiff's limitations, including work place limitations, simply were not supported by the medical evidence of record, including Dr. Cintron's own mental status examinations of the claimant, and the Plaintiff's function reports. (R. 40).   The ALJ's determinations on this point is also supported by the record.

      The Plaintiff's testimony at the hearing before the ALJ also did not demonstrate that her bipolar disorder kept her from working.  At the hearing, the Plaintiff testified that she successfully obtained her vocational license as a beautician. (R. 57-58).  The Plaintiff's statements regarding her inability to maintain work in the cosmetology field indicated that the Plaintiff's inexperience in the field may have caused her to be nervous and unable to establish a clientele base. (R. 69).  There is no indication that her bipolar medical condition impinged upon her ability to work in that field.

      The Plaintiff also argues that the ALJ provided an insufficient explanation as to how the ALJ determined Plaintiff retained the mental residual functional capacity for unskilled work in the absence of supporting medical opinion evidence, ECF No. [24] at 13.  In this regard, the Plaintiff contends that the ALJ failed to take into account the unstable nature of the Plaintiff's impairment, and to account for the Plaintiff's activities during her manic versus her depressive phases, or her delusional/obsessional religious fixation, ECF No. [24] at 17.  The Plaintiff further contends that the ALJ failed to consider the longitudinal  nature of the medical evidence in the record.

      However, the ALJ did consider all of the claimant's records and medical treatment from November 2014 through almost the end of December 2015, which reflected the Plaintiff to be relatively stable.  As noted above, other than the approximately ten-day period in July 2015, when the Plaintiff admittedly stopped taking her medication, Dr. Cintron's treatment notes do not suggest the Plaintiff had "good"

days and "bad" days, and fail to indicate that Plaintiff suffered significant periods of depression or mania, but rather indicate that for more than a year, the Plaintiff had reported "no major concerns" and displayed no evidence of gross psychosis or agitation. (R. 555, 590, 599, 597, 596, 595, 594, 592, 591).

Finally, Plaintiff's contention that the Plaintiff's condition from the comparison point decision date in 2005 and her condition during the redetermination period between 2014 and 2015, remained unchanged is not supported by the record, ECF No. [24] at 17-20. On this issue, the ALJ determined that as of December 1, 2014, there had been a decrease in the severity of the Plaintiff's impairment, and noted that the mental status exams from July 2014 through December 2015 had been unremarkable, except for one period in July 2015 when the Plaintiff was not taking her medication. (R. 37). The Plaintiff relies on comparisons between Plaintiff's medical records in 2005 and her medical records in 2014 to demonstrate that her behavior and condition during both periods of time are similar, ECF No. [24] at 17-19. However, the medical records clearly support the ALJ's conclusion that the Plaintiff's impairment decreased in severity. Specifically, and by way of example, as noted by the Plaintiff in her Motion for Summary Judgment, in September of 2005, a few months after the Plaintiff was found to be disabled, Plaintiff was evaluated by non-examining State Agency psychologist, Dr. James Mendeson, Ph.D, who, among other things, noted that the Plaintiff's treating psychiatrist described the Plaintiff's mood as hypomanic with congruent affect, that she had poor concentration, marked mood swings, irritability and auditory hallucinations. (R. 346). In addition, the treating psychiatrist concluded that the Plaintiff could not work because of conflictual social interactions and an inability to sustain concentration. (R. 346). Further, the Plaintiff's mother stated that yhe Plaintiff had to be constantly supervised, heard voices that scared and threatened her, and had obsessive religious preoccupations. (R. 346).

Neither Dr. Cintron's treatment notes between 2014-2015, nor the Plaintiff's mother's description of the Plaintiff's behavior, comes close to the level of impairment described during the comparison point decision evidence between 2004-2005. On this point, it also bears noting that the one reported conflictual interaction that the Plaintiff had in 2015, occurred with her brother when she stopped taking her medication, and this fact was noted by the ALJ in her decision. (R. 39). Therefore, ALJ's determination on this issue is supported by substantial evidence in the record.[8]

### B. *Whether the ALJ Appropriately Considered Plaintiff's Credibility*

Plaintiff next contends that the ALJ erred by failing to properly evaluate Plaintiff's credibility. Specifically, the Plaintiff contends that the ALJ failed properly consider the evidence in the record or to rely on the factors set forth in *Holt v. Sullivan,* 921 F.2d 1221, 1223 (11th Cir. 1991) in evaluating that Plaintiff's credibility regarding her residual functioning, ECF No. [24] at 20.

The Eleventh Circuit has established a three-part standard for evaluating a claimant's subjective complaints of pain or other symptoms. *Holt v. Sullivan,* 921 F.2d 1221, 1223 (11th Cir. 1991). "The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Id.* Once the ALJ determines that the record demonstrates a medically determinable impairment that could reasonably cause a claimant's alleged symptoms or pain, she is then required to "'evaluate the intensity and persistence of [the] symptoms so that [he] can determine how [the] symptoms limit [the claimant's] capacity for work.'"

---

[8] The Court notes that the Plaintiff has not directly challenged the ALJ's Step-Two determination that medical improvement had occurred in this case. Accordingly, the undersigned addresses this as a challenge to the ALJ's purported failure to give proper weight to a treating physician's opinions for purposes of determining the Plaintiff's RFC. The same analysis would apply, however with respect to the Step-Two determination.

*Adamo v. Comm'r of Soc. Sec.,* 365 F. App'x 209, 214 (11th Cir. 2010) (quoting 20 C.F.R. § 404.1529(c)(1)). "In evaluating the intensity and persistence of a claimant's symptoms, the ALJ considers 'all available evidence,' including objective medical evidence, such as medical signs and laboratory findings, statements of the claimant and others about the claimant's symptoms, the medical opinions of treating physicians and nontreating physicians, and evidence of how the pain affects the claimant's daily activities and ability to work." *May v. Comm'r of Soc. Sec. Admin.,* 226 F. App'x 955, 958 (11th Cir. 2007). "After considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence." *Marbury v. Sullivan,* 957 F.2d 837, 839 (11th Cir. 1992).

Here, the ALJ considered Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms in light of her residual functional capacity assessment. After careful consideration of the evidence, the ALJ found that Plaintiff's medically determinable impairments could have reasonably been expected to cause some of the alleged symptoms; however, the ALJ found that Plaintiff was only a partially credible witness as her statements were not consistent with other record evidence and were discounted to the extent they were inconsistent with the residual functional capacity assessment. Specifically, the ALJ found that the Plaintiff's testimony regarding her lack of socialization was belied by her testimony that she attended church with 500 other attendees. (R. 39). In addition, the ALJ found that the Plaintiff's ability to complete vocational training, coupled with her routinely normal mental status exams, was inconsistent with her alleged inability to perform work involving a low level of stress. (R. 39). Thus, the ALJ did not discredit Plaintiff's testimony solely because it was inconsistent with objective medical evidence, but rather considered the entire record in reaching that conclusion. In addition, based upon the above analysis regarding the ALJ's determination of Plaintiff's residual functioning capacity, notwithstanding Dr.

Cintron's conclusion to the contrary, the undersigned finds that the ALJ's determination regarding the Plaintiff's subjective complaints were supported by substantial evidence in the record. *See Moore v. Barnhart,* 405 F.3d 1208, 1212 (11th Cir. 2005) (noting that credibility determinations are within the province of the ALJ). Finally, although the ALJ did not specifically refer to the *Holt* case in making her determination, it is clear that the ALJ determined the Plaintiff's bipolar medical condition was not of such a severity that it could be reasonably expected to give rise to the limitations and symptoms testified to by the Plaintiff. Accordingly, the ALJ's finding that the Plaintiff's testimony was not entirely credible was appropriate and should be affirmed.

## V. CONCLUSION

Based on the foregoing, this Court finds that substantial evidence supports the ALJ's determination that the Plaintiff is not disabled. Therefore, in accordance with the above, it is herby

**ORDERED AND ADJUDGED** that the Plaintiff's Motion for Summary Judgment, ECF No. [24], is **DENIED**, and that Defendant's Motion for Summary Judgment, ECF No. [25], is **GRANTED**.

**DONE AND ORDERED** in Chambers, this 30th day of March 2018, in Miami, Florida.

_____
**ANDREA M. SIMONTON**
**UNITED STATES MAGISTRATE JUDGE**

Copies furnished via CM/ECF to:

All counsel of record